UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA ANNE SUTTON

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY

        Defendant,
_____/

Case No. 1:14-CV-1112

HON. ROBERT J. JONKER

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Theresa Sutton seeks review of the Commissioner's decision denying her claim for disability insurance benefits (DIB) under Title II of the Social Security Act.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the

Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 51 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 18, 45). She completed the twelfth grade, and was previously employed as an administrative assistant, membership director, and events coordinator. (Tr. 45, 70–71). Plaintiff applied for benefits on August 13, 2013, alleging that she had been disabled since July 30, 2013 due to post-traumatic stress disorder and depressive disorder. (75, 120–26). Plaintiff's application was

denied on November 12, 2013, after which time she requested a hearing before an ALJ. (Tr. 86–90). On April 8, 2014, Plaintiff appeared with her counsel before ALJ Kathleen Eiler with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 28–53). In a written decision dated May 23, 2014, the ALJ determined that Plaintiff was not disabled. (Tr. 18–35). Thereafter, the Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter. (Tr. 1–6). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the durations requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

3

The claimant has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Eiler determined Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 23). At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease; (2) arthritis of the right ankle; (3) obesity; (4) affective disorder; (5) anxiety disorder; and (6) personality disorder. (Tr. 23–24). At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 24–26). At the fourth step, the ALJ found that Plaintiff retained the residual functional capacity (RFC) based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel, crouch, or crawl. She must avoid all exposure to workplace hazards. The claimant can perform simple, routine, and repetitive tasks with minimal changes in a routine work setting and no production rate pace work. She can occasionally interact with supervisors, but is limited to minimal, superficial interaction with coworkers and the general public.

(Tr. 26). The ALJ next determined that under the above RFC, Plaintiff was unable to perform her past relevant work. (Tr. 33).

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 494,000 national jobs which an individual similar to Plaintiff could perform (Tr. 71–72). These included the positions of inspector and hand packager, housekeeping cleaner, and router. (Tr. 71–72). This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (Tr. 35).

## DISCUSSION

Plaintiff's statement of errors presents the following claims:

1. The ALJ committed reversible error by not properly considering the opinion of Plaintiff's treating psychiatrist, of her treating therapist, and of the consultative examiner.

2. The ALJ committed reversible error by failing to properly consider Plaintiff's obesity under SSR 02-01P.

3. The ALJ committed reversible error by supporting her opinion with improper boilerplate language.

4. The ALJ committed reversible error by not following the vocational expert's answer to an accurate hypothetical question.

(Dkt. #11, PageID 496). The Court will discuss the issues below.

1.  **Medical Opinions**

Plaintiff first argues that she is entitled to relief because the ALJ failed to properly assess the opinions of her treating psychiatrist and therapist, as well as the opinion of a consulting psychologist. The Court is not persuaded.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (*citing Shavers v. Sec'y of Health and Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (*citing Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ gives less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent

reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (*quoting Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376–77.

### A. Dr. Naudia Pickens

On April 3, 2014, Dr. Pickens completed a report regarding Plaintiff's mental residual functional capacity. (Tr. 443–47). The doctor concluded that Plaintiff was far more limited than the ALJ determined. Specifically, the doctor opined on Plaintiff's ability to make occupational adjustments, performance adjustments, and personal and social adjustments. The ALJ noted Plaintiff had extreme limitations[2] regarding her ability to relate to co-workers, deal with the public, interact with supervisors, and deal with work stresses. Plaintiff further had extreme limitations regarding her ability to understand, remember, and carry out complex job instructions, behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. The doctor concluded that Plaintiff "has suffered from decades of depression and anxiety such that she spends a lot of time wishing she was dead. In fact she is often resentful when she sees that others have committed suicide while she remains miserable on this earth. Nevertheless she has been trying to

---

[2]The assessment form defined extreme as "a degree of limitation that is incompatible with the ability to do any gainful activity." (Tr. 443).

no avail to participate in therapy and medication management." (Tr. 445). The ALJ gave only "limited weight" to Dr. Pickens' opinion. (Tr. 32).

It is undisputed that Dr. Pickens qualifies as a treating physician. Accordingly, the ALJ was required to give "good reasons" for discounting the opinion. *Gayheart*, 710 F.3d at 376. The ALJ discounted Dr. Pickens' opinion on the ground that such is not supported by the doctor's own treatment notes. (Tr. 32). This conclusion is supported by substantial evidence. (330–98). The ALJ also said Plaintiff "generally reported feeling better as long as she remained on her medication." (Tr. 32). This conclusion is likewise supported by Dr. Pickens' treatment notes which document Plaintiff's reports of improvement after she took her medication. (Tr. 340, 417). Plaintiff has failed to show how the ALJ erred in her treatment of this opinion.

### B. Chad Campbell

On March 7, 2014, Mr. Campbell, a licensed social worker, completed a report regarding Plaintiff's mental residual functional capacity. (Tr. 410–12). The worksheet was identical to that completed by Dr. Pickens (Tr. 410–12, 443–47). Mr. Campbell opined that Plaintiff had extreme limitations regarding her ability to deal with the public and work stresses, as well as maintain attention and concentration. She was unable to follow complex job instructions, relate predictably in social situations, and was extremely limited in her ability to maintain concentration, persistence or pace. (Tr. 410–11). The ALJ gave the opinion "limited weight." (Tr. 31).

There is no "treating therapist" rule. As such, the opinion of a therapist is not entitled to any particular weight. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014); *Hill v. Comm'r of Soc. Sec.*, No. 1:12–cv–235, 2013 WL 2896889, at *2–3 (W.D. Mich. June 13, 2013). Therapists are not acceptable medical sources. *See* 20 C.F.R. §§ 404.1513(a), (d)(1).

Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See* SSR 06–3p, Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, at * 2 (Aug. 9, 2006). The opinions of therapists fall within the category of information provided by "other sources." *See* 20 C.F.R. § 404.1513(d)(1).

The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (*citing* 20 C.F.R. §§ 404.1513, 416.913); *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007); *See Hill v. Comm'r of Soc. Sec.*, 2013 WL 2896889, at * 2–3. This is not a demanding standard, and it was easily met here. (Tr. 31). The ALJ found that the extreme restrictions that Mr. Campbell suggested were not well supported with the treatment records of Dr. Pickens and Plaintiff's own statements. (Tr. 31). This conclusion is supported by substantial evidence. (Tr. 330–98). Plaintiff's argument is therefore rejected.

### C. Michael Brady

On October 30, 2013, Psychologist Michael Brady performed a consultative examination on a referral from the state disability agency. (Tr. 302–05). Psychologist Brady noted that Plaintiff "drove herself to the evaluation" and "was very tearful throughout the evaluation." (Tr. 302). Psychologist Brady concluded Plaintiff's prognosis was "poor," noting:

> [Plaintiff's] ability to relate and interact with others, including coworkers and supervisors, is impaired due to her ongoing distress and depression. Her

9

> ability to understand, recall, and complete tasks and expectations does not appear to be significantly impaired. However, her ability to maintain concentration does seem somewhat impaired. Her ability to withstand the normal stressors associated with a workplace setting is somewhat impaired as well.

(Tr. 305). Based on his interview with Plaintiff, the psychologist diagnosed Plaintiff with major depressive disorder and assigned a GAF score of 50. (Tr. 305). Psychologist Brady was not a treating psychologist. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *see also Louden v. Comm'r of Soc. Sec.*, 507 F. App'x 497, 498 (6th Cir. 2012); *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x at 506–07. Because he was not a treating psychologist, the ALJ was not "under any special obligation to defer to [his] opinion or to explain why [s]he elected not to defer to it." *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011).

The ALJ discounted the psychologist's opinion, giving it only "some weight" on the grounds that the record shows Plaintiff is not impaired as alleged, and that the broad statements of the psychologist were not useful in determining Plaintiff's functional limitations. (Tr. 31). The ALJ's conclusion is supported by substantial evidence, as it is inconsistent with treatment notes and Plaintiff's statements that demonstrate improvement. (Tr. 330–98). Accordingly, Plaintiff's argument is rejected.

### D. William Schirado

Plaintiff concludes this argument by arguing the ALJ erred in giving the opinions of those who examined Plaintiff less weight than the opinion of non-examining reviewer, William Schirado which was given on November 12, 2013. (Tr. 75–83). Specifically, Plaintiff argues that the ALJ erred in giving significant weight to the opinion because Dr. Schirado did not have the opportunity to review the complete record. "When an ALJ relies on a non-examining source who

did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted). The record demonstrates the ALJ did so in this case by, for example, considering Dr. Pickens and Mr. Campbell's opinions which were given in 2014, as well as other later developments. (Tr. 31–32, 37–39). Accordingly, Plaintiff's claim is rejected.

Plaintiff also asks the Court to follow *Boruff v. Astrue*, 648 F. Supp. 2d 932, 943–44 (E.D. Mich. 2009), in which the court held that the ALJ erred in finding that the GAF score provided by a consultative psychologist was not consistent with the medical evidence. *Id*. The facts in *Boruff*, however, are distinguishable from those of this case. While the plaintiff in *Boruff* received virtually identical GAF scores from five different experts, *id.* at 193–94, Plaintiff's GAF scores in this case were all over the map, ranging from 35 to 58. (Tr. 260, 269, 276, 278, 305, 343, 353, 358, 363, 369, 397, 420, 425, 430). Moreover, *Boruff* is not binding on this Court. Rather, this Court must follow the rulings of the Sixth Circuit, which has explicitly rejected the proposition that an ALJ should determine disability based solely on the unsupported, subjective determination of a GAF score. *Rutter v. Comm'r of Soc. Sec.*, No. 95–5772, 1996 WL 379424, at *2 (6th Cir. July 15, 1996). *See also Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 511 (6th Cir. 2006) (noting that there is no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score in the first place"). Accordingly, Plaintiff's argument is rejected.

### 2. Obesity

Plaintiff next argues that because the ALJ failed to properly evaluate and consider her obesity, the RFC determination is not supported by substantial evidence.

While obesity is no longer considered a "listed impairment" by the Social Security Administration, the effect of obesity on a claimant's ability to work must be specifically considered. *See, e.g.*, SSR 02–01P, Titles II and XVI: Evaluation of Obesity, 2002 WL 34686281 (Sept. 12, 2002); *Shilo v. Comm'r of Soc. Sec.*, 600 Fed. Appx. 956, 959 (6th Cir., Jan.28, 2015) ("[A]n ALJ must consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation.") (internal quotations omitted).

The ALJ is not obligated to employ any "particular mode of analysis" when assessing the impact of a claimant's obesity. *See Shilo*, 600 Fed. Appx. at 959. Nevertheless, the ALJ must do more than merely "mention the fact of obesity in passing." *Id*. As the Sixth Circuit recently reiterated:

> Obesity . . . must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity,' precisely because 'the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately.'

*Shilo*, 600 Fed. Appx. at 959 (*quoting* SSR 02–1P, 2002 WL 34686281 at *1–2).

The rationale for specifically considering the effect of obesity on a claimant's ability to function and perform work activities is straightforward:

> Obesity 'commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems.' For example, 'someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.' The ALJ also must specifically take into account 'the effect obesity has upon the individual's ability to perform routine movement and necessary physical

12

activity within the work environment,' and consider how 'fatigue may affect the individual's physical and mental ability to sustain work activity'-especially in 'cases involving sleep apnea.'

*Shilo*, 600 Fed. Appx. at 959 (*quoting* SSR 02–1P, 2002 WL 34686281 at *3–6).

The record shows the ALJ considered Plaintiff's obesity throughout the decision. At step 2, the ALJ determined Plaintiff's obesity was a severe impairment. (Tr. 23). At step 3, the ALJ found that Plaintiff did not meet or equal a listing in the Listing of Impairments, but noted that, under SSR 02-1P, he had considered Plaintiff's obesity "in relation to the musculoskeletal, respiratory, and cardiovascular body systems." (Tr. 24). In considering Plaintiff's RFC at step 4, the ALJ noted:

> In terms of the claimant's obesity, the claimant is five feet and four inches tall and has weight ranging from 275 to 282 pounds for a Body Mass Index between 47.2 and 48.4 (2E/2; 6F/23). The claimant is clinically obese. The undersigned has considered how weight affects her ability to perform routine movement and necessary physical activity within the work environment. The undersigned is aware that obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. Obesity can cause limitation of function and the effects of obesity may not be obvious. The combined effects of obesity with other impairments may be greater than might be expected without the disorder. The undersigned has considered any added or accumulative effects the claimant's obesity played on her ability to function, and to perform routine movement and necessary physical activity within the work environment.

(Tr. 28). The ALJ's explicit discussion of Plaintiff's obesity indicates sufficient consideration of her obesity under the regulations and SSR 02–01p. *See Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 443 (6th Cir. 2010); *Allen v. Colvin*, No.3:10–cv–01024, 2014 WL 1775564 at *21 (M.D. Tenn. April 29, 2014). Accordingly, Plaintiff's claim of error is denied.

### 3. Credibility

Plaintiff finally makes two arguments regarding the ALJ's treatment of her credibility: first, the ALJ erred by using boilerplate language in rejecting the plaintiff's subjective allegations;

and second, the ALJ erred by refusing to adopt the hypothetical posed to the VE which incorporated Plaintiff's subjective complaints. The Court is not convinced.

In discounting Plaintiff's subjective allegations, the ALJ concluded:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in the decision.

(Tr. 28). In arguing the ALJ erred, Plaintiff cites to *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012), in which the Seventh Circuit criticized the use of language similar to that quoted above as "meaningless boilerplate." *Id*. at 645. As has been recognized, however, the shortcoming with the ALJ's decision that was at issue in *Bjornson* was that the ALJ in that case "used the boilerplate as [his] only statement about the claimant's credibility." *Johnson v. Comm'r of Soc. Sec.*, 2013 WL 1703894 at *4 (W.D. Mich., Apr. 19, 2013). On the other hand, where such boilerplate is accompanied by appropriately detailed and focused analysis, the presence of the offending boilerplate does not constitute grounds for relief. *Id.* Here, the ALJ discussed the evidence of record at length and detailed her rationale for discounting Plaintiff's subjective allegations. (Tr. 30–31). The Court, therefore, rejects this argument.

As to Plaintiff's second claim regarding the ALJ's credibility analysis, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Sec'y of Health and Human Services.*, 927 F.2d 228, 231 (6th Cir. 1990). It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Carrelli v. Comm'r*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical

questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.' ") (*quoting Casey*, 987 F.2d at 1235). The VE does not determine a claimant's medical restrictions or how they impact on the claimant's residual functional capacity-that is the ALJ's job. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987). The ALJ, having found that Plaintiff's subjective complaints were not fully credible, was not bound in any way by the VE's responses to hypothetical questions incorporating a contrary assumption. Plaintiff's argument is thus rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.

Dated:     December 1, 2015            /s/ Robert J. Jonker
                                                                          ROBERT J. JONKER
                                                                          CHIEF UNITED STATES DISTRICT JUDGE